IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Norman Alan Kerr, | ) | Civil Action No. 5:16-cv-00278-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, K. Rogers,[1] | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Norman Alan Kerr ("Petitioner"), a federal prisoner, filed this pro se Petition

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Motion to

Dismiss, or in the alternative for Summary Judgment. ECF No. 31. Pursuant to *Roseboro v.*

*Garrison*, 528 F.2d 309 (4th Cir. 1975), on June 7, 2016, the court advised Petitioner of the

summary judgment and dismissal procedures and the possible consequences if he failed to

respond adequately to Respondent's motion. ECF No. 32. Petitioner filed a Response in

Opposition to Respondent's Motion on June 15, 2016. ECF No. 34; *see Houston v. Lack*, 487

U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to

prison authorities for forwarding to district court). This matter is before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. for a Report and Recommendation.

---

[1] At the time this case was filed, the Warden at FCI-Edgefield was L. R. Thomas. This is

the name that Petitioner provided in the caption of his Petition for the Respondent. ECF No. 25.

In the Memorandum in Support of the Motion now under review, Respondent indicates that

Thomas is no longer the Warden and that the current Warden at FCI-Edgefield is K. Rogers.

Respondent requests that K. Rogers be substituted as the proper Respondent, ECF No. 31 at 2,

and Petitioner does not object to the substitution.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion be granted.

## I.    Factual Background

Petitioner is currently incarcerated at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). The record shows that on August 30, 2015, at approximately 6:30 p.m., Correctional Officer J. Moss was conducting security rounds and area searches on Unit B-1 at FCI-Edgefield. ECF No. 31-2 at 1 (Version Three of Incident Report No. 2755993).[2] According to his incident report, Correctional Officer Moss entered cell #223, which was being occupied by Petitioner. Officer Moss reported that he advised Petitioner that he would be conducting a random pat search and cell search. According to Officer Moss, when he instructed

---

[2] The incident report was initially written on August 30, 2015, at 10:30 p.m. and only charged Petitioner with Insolence Towards a Staff Member in violation of Code 312. ECF No. 31-3 at 1 (Version One of Incident Report No. 2755993, dated August 30, 2015). It was delivered to Petitioner at 6:25 p.m. on August 31, 2015. *Id.* It was suspended pending an additional charge to be added to the incident report. ECF No. 31-2 at 2. On September 2, 2015, another incident report was prepared by Officer Moss whereby he added specific words said by Petitioner to him during the incident and added the charge of Threatening Another with Bodily Harm in violation of Code 203. ECF No. 31-4 at 1 (Version Two of Incident Report No. 2755993, dated September 2, 2015). It was delivered to Petitioner on September 2, 2015, at approximately 9:40 p.m. *Id.* Version Two of the incident report was suspended on September 3, 2015, pending a rewrite and un-suspended on September 3, 2015. ECF No. 31-2 at 2. Petitioner does not challenge the incident report re-writes other than to question "[w]hy does it take 3 statements from Officer Moss." ECF No. 34 at 9.

Petitioner to turn around for the purpose of being pat searched, Petitioner "started to move around a lot." *Id.* Officer Moss stated that he began his pat search on Petitioner and searched Petitioner's pockets and waist band around his shorts. Officer Moss indicated that he instructed Petitioner to turn and shake his shorts because he seemed to be hiding contraband in the front of his shorts. Officer Moss reported that Petitioner refused to continue the search and begin moving away, but was instructed to remain still so the officer could finish his search. Officer Moss reported that Petitioner refused to allow him to finish the search, announcing out loud "you must be gay and [that] I just want[ed] to look at his penis." *Id.* Officer Moss also reported that Petitioner stated that "I am not with that s**t and I will beat your ass." *Id.* According to Officer Moss's report, Petitioner also stated that Officer Moss did not have to search him and that he could only search his cell. Officer Moss reported that at that point he instructed Petitioner to leave the dormitory and go to the Lieutenant's office, and that Petitioner cursed at Officer Moss stating, you f***ing gay ass." *Id.* Officer Moss stated that he then notified the Lieutenant's office. *Id.*

As noted in footnote 2, on September 2, 2015, at approximately 9:30 p.m., Officer Moss prepared an incident report charging Petitioner with Insolence Towards a Staff Member ("insolence charge") and Threatening Another Bodily Harm ("threatening charge") in violation of Code 312 and 203, respectively. *Id.* The incident report was delivered to Petitioner on September 3, 2015, at approximately 6:30 p.m. and provided Petitioner with a description of the incident and the prohibited acts with which he was being charged. *Id.* The matter was referred to a Lieutenant for investigation on the same day. *Id.* at 2. Petitioner was advised of his rights, made a statement and did not request any witnesses. Petitioner stated "Officer Moss never told me he was going to search me. He then made me turn around to face him and [he] then

3

proceeded to pull out my shorts, put his head near my stomach to look at his penis. That's when I said I wanted to go to the Lt.'s Office." *Id*. The investigating officer determined there was sufficient evidence to support the charge and referred the matter to the Unit Discipline Committee ("UDC") for further review. *Id*. The UDC hearing was conducted on September 4, 2015. *Id*. at 1. Petitioner was advised of his right to remain silent during the UDC hearing, but it was noted that his silence – and his silence alone – could be used to draw an adverse inference against him at any stage of the disciplinary process. *Id*. at 2. Petitioner stated that the report was false and the Officer did not properly conduct a search. *Id*. at 1. He stated "it seems a little Gay the way it happen." *Id*. Based on the incident report, the UDC referred the matter to the Discipline Hearing Officer ("DHO"). *Id*.

On September 4, 2015, Petitioner was given written notice of a hearing before the DHO as well as his rights at the DHO hearing. ECF Nos. 31-5, 31-6. On this same day, Petitioner requested a staff representative, but he later waived his right to a staff representative at the DHO hearing. ECF Nos. 31-2, 31-5. On August 8, 2015, a hearing was conducted before the DHO. ECF No. 31-7 at 1 (DHO Report, dated September 23, 2015). Petitioner was present and again advised of his rights. Petitioner stated that he understood his rights, declined the assistance of a staff representative, and did not wish to have a witness testify. *Id*. In his defense, Petitioner stated that when he came back from the chow hall on August 30, 2015, Officer Moss was in his cell and "bumped" him. *Id*. Petitioner stated that Officer Moss searched his cell, had him pull out his pockets, and then began to pat search him thoroughly. He stated that he told Officer Moss that he wished to speak to the Lieutenant because he felt the search was sexually charged because the Officer used his head to hold him in place while he searched him. Petitioner said that he told the Officer that "his actions seemed to be a little gay." *Id*.

After considering all of the evidence, the DHO found that Petitioner committed the prohibited act detailed in the insolence charge. The DHO did not find that Petitioner had committed the act detailed in the threatening charge. *Id*. The DHO indicated that he based his decision on the facts presented in the body of the incident report, as well as the eyewitness account of the Officer Moss. *Id*. at 2. The DHO did not believe Petitioner's claim that he was not insolent toward Officer Moss and found Moss's statement more credible. The DHO found that the greater weight of the evidence (Officer Moss's written report) showed that Petitioner's statements to the Officer were rude and contemptuous and that he refused an order. *Id*. The DHO imposed sanctions including disallowance of 14 days of good-conduct time, disciplinary segregation for 15 days suspended, and loss of commissary privileges for three months. *Id*. The DHO prepared a written report detailing his decision, the evidence relied upon, and the reasons for the sanctions imposed. *Id*. A copy was delivered to Petitioner on September 24, 2015. *Id*. at 3.

Petitioner appealed this decision through the Bureau of Prisons' ("BOP") administrative remedy process to the Regional level. ECF No. 25-1 at 12. Petitioner claimed he did not commit the prohibited act. He contended that since the DHO dismissed the threatening charge, the insolence charge should also be dismissed. Petitioner argued that if the DHO did not believe the threats there is no reason he should believe the rest of the Officer's report. *Id*. The disciplinary action and sanctions were upheld by the BOP's Southeast Regional Office. *Id*. at 11. In the Regional response, Petitioner was informed that the DHO considered his statement as well as the reporting officer's statement and found that Petitioner committed the prohibited act based on the greater weight of the evidence, which was noted to be the Officer's statement. The Regional response also noted that the DHO adequately ex plained to Petitioner the specific evidence relied

on to find he committed the prohibited act. *Id*. On October 20, 2015, Petitioner appealed this determination to the BOP's Central Office. ECF No. 31-8. In his appeal, Petitioner claimed that Officer Moss falsified the incident report. *Id*. He also claimed that lenience should be allowed when an inmate is under duress during sexual misconduct by staff. *Id*. According to Respondent's counsel and the record, a response from the Central Office was still pending on May 17, 2016.[3] ECF Nos. 31 at 8, 31-9.

With the filing of this Petition for Writ of Habeas Corpus Petitioner seeks to overturn his administrative disciplinary action and have the disciplinary action expunged from his records. Petitioner claims that his constitutional rights were denied because Officer Moss's incident report was false and the DHO improperly accepted it as evidentiary support for the insolence charge despite finding that it did not support the threatening charge. Petitioner also indicates a desire to file a complaint in state court against Officer Moss for sexual misconduct. ECF No. 25 at 8.[4]

II.     Standard of Review

A.     Motion to Dismiss

---

[3] Because the time period for a response from the Central Office has passed, Petitioner "may consider the absence of a response to be a denial at that level." ECF No. 31-10 (BOP Program Statement 1330.18, Administrative Remedy Program at § 12) ("If the inmate does not receive a response within the time allotted for reply . . . the inmate may consider the absence of a response to be a denial at that level."). Thus, Petitioner is deemed to have fully exhausted his administrative remedies despite having not received a decision from the Central Office and Respondent does not contest that exhaustion is complete.

[4] This court has no authority to allow Petitioner to file a state lawsuit or to prevent him from filing one.

Pursuant to Rule 12(b)(6) a motion to dismiss may be granted when, construing allegations in light most favorable to plaintiff and assuming facts alleged in the complaint to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In deciding a Rule 12(b)(6) motion, the court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must construe factual allegations in the nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (noting that in 12(b)(6) analysis, court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-18 (4th Cir. 1994).

### B.    Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that

assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.    Habeas Corpus

1.    Section 2241 Generally and Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under [28 U.S.C.] § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters,

sentence computation, calculation of good-time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, No. 0:08-607-RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008).

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-91 (1973) (requiring exhaustion in 28 U.S.C. § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief.") (internal quotation marks omitted). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Respondent does not dispute that Petitioner exhausted his available administrative remedies. ECF No. 12 at 3.

    III.    Discussion

When a prisoner faces the possible loss of good-conduct credits in prison disciplinary proceedings, he is entitled to certain due process protections. *See Wolff v. McDonnell,* 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff,* 418 U.S. at 564-71. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985). The "some evidence" standard the court employs in considering this matter is a lenient one. The DHO's decision is to be upheld when supported by no more than "a modicum of evidence," and the

9

standard is met if there is any evidence in the record that could support the decision. *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 455-56. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id.* Federal courts do not review the accuracy of a disciplinary committee's finding of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984) (an agency's decisions are not to be second‑guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute). Judicial review of prison disciplinary actions is therefore limited solely to a determination as to whether there is evidence in the record to support the DHO's decision. *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989) (citing *Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986)); *see also Kirillov v. Yancy*, No. 9:05-3251-HFF, 2006 WL 2827373, at *8 (D.S.C. Sept. 28, 2006).

Here, Petitioner does not assert that his procedural rights were violated in connection with the disciplinary process. Instead, his primary challenge is to the sufficiency of the evidence to support his conviction on the insolence charge. Nevertheless, review of the record discloses that Petitioner was afforded all of his *Wolff* rights in connection with the DHO hearing. Petitioner was given advance written notice of the charges more than twenty-four hours before the DHO hearing. He was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. At the hearing, Petitioner elected to

waive his right to have assistance of a staff representative and waived his right to have witnesses. The record of the hearing reflects the DHO's decision, the evidence relied upon, and the reasons for his decision and the sanctions imposed.

Instead of challenging the process employed leading to the DHO's decision, Petitioner asserts that his constitutional rights were violated because the DHO improperly relied on Officer Moss's incident report to support his decision because he asserts that Moss's statements were "false." ECF No. 34 at 10. He asserts that more weight should have been given to his own testimony and that his actions should have been excused because Officer Moss engaged in sexual misconduct. *Id.* at 15. However, having reviewed the record and the parties' arguments, the undersigned finds that "some evidence" exists to support the DHO's decision. As previously noted, Plaintiff chose not to present documentary evidence or witness testimony and simply denied the charge against him, thus requiring the DHO to make a credibility determination relative to Petitioner's version of the events and Officer Moss' version. This DHO chose to believe Officer Moss' version, at least insofar as the insolence charge was concerned, and that version, shown on the incident report, adequately provides some evidence to support the DHO's decision. Even though Petitioner asserts that the DHO's decision to not convict him on the threatening charge makes his decision to convict on the insolence charge question, this court cannot second guess that decision or re-weigh the evidence because the insolence conviction is supported by some evidence. This court has previously held that it is not the court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. *See Marin v. Bauknecht*, No. 8:07-01650-JFA, 2007 WL 3377152, *4 (D.S.C. Nov. 9, 2007) (The court "does not have the authority to weigh evidence or to judge the strength of any particular defense the petitioner may present."). Because there is some evidence to support the DHO's

decision and the requirements of due process were satisfied and because it is not arbitrary and capricious, the decision should be upheld.

Furthermore, Petitioner's attempt to challenge the BOP's administrative remedy process because he never received a response to his Central Office appeal, ECF No. 34 at 1-5, should be rejected. There is no constitutional right to a working grievance system, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) and, in any event, Petitioner was not prejudiced by the lack of a response because the administrative remedy regulations explicitly provide that a prisoner who does not receive a timely response may consider that his appeal was denied. BOP Program Statement 1330.18, Administrative Remedy Program at § 12. Thus, Petitioner was not barred from pursuing this habeas corpus action and he will not be precluded for lack of administrative exhaustion from engaging in any further litigation on the facts involved in this case because the conclusion of the Central Office appeal is the final step in the BOP administrative remedy process. *See* 42 U.S.C. § 1997(e) (prison inmates must fully exhaust "such administrative remedies as are available" before they may pursue a civil action under 42 U.S.C. § 1983); *Woodford v. Ngo*, 548 U.S. 81 (2006) (prisoners must "properly exhaust" their administrative remedies before coming into court). Also, Petitioner's arguable assertion of a "constitutional right of access to the courts" claim, ECF No. 34 at 6, is not properly raised in this habeas corpus proceeding because it is clear that he has been fully able to access this court, that his constitutional rights have not been violated by the BOP administrative remedy policy, and that such a conditions of confinement claim is not within the core of habeas corpus. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (claims seeking injunctive relief for conditions of confinement fall outside the "core" of habeas corpus). Finally, to the extent that Petitioner asks this court to order an investigation into Officer Moss's alleged sexual misconduct, ECF No. 34 at 13, that request should be denied because such

relief is not appropriate in a habeas-corpus action. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody"); *Peeles v. O'Brien*, No. 1:14CV5, 2014 WL 1660601, at *2 (N.D.W. Va. April 23, 2014) (request for injunctive relief in the form of an order for investigation into BOP practices not proper in a § 2241 action).

    IV.    Conclusion

Based on the foregoing reasons, the court recommends that Respondent's Motion, ECF No. 31, be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


September 12, 2016                    Kaymani D. West
Florence, South Carolina           United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).